IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| HEATHER TRAUTMAN, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 1:16-CV-1049-LY |
| v. | § § | |
| TIME WARNER CABLE TEXAS LLC | § § | |
| *Defendant.* | § § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
---

For its Motion for Summary Judgment, Defendant Time Warner Cable Texas LLC ("Time Warner Cable") respectfully shows the following:

### I.   INTRODUCTION

Despite Time Warner Cable's attempts to devise a work arrangement for Trautman that would accommodate her claimed need to avoid driving in heavy traffic as well as its need to have her present and in the office to complete the essential functions of her job, Trautman refused to appear at work as expected and required.  Between January 1, 2015 and her ultimate termination of employment on April 9, 2015, Trautman accrued no less than thirty-four (34) unexcused absences, twenty one (21) of which were full-day absences that were plainly unrelated to her request for intermittent FMLA leave or heavy traffic related anxiety.  It was as a result of these numerous absences, not any claimed disability or FMLA usage, that Trautman's employment ended.  Because, as detailed further below, there is absolutely no evidence to support Trautman's

claims of ADA disability discrimination and FMLA violations, her lawsuit should be summarily dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Pursuant to Western District of Texas Local Rule CV-7(d)(1), Defendant Time Warner Cable attaches its Factual Background as Exhibit A to this Motion.

## III.   ARGUMENT & AUTHORITIES

### A.   Burden-Shifting Framework Applies to ADA Discrimination and FMLA Retaliation Claims

The Fifth Circuit applies the *McDonnell Douglas* burden-shifting framework to analyze claims of discrimination and retaliation under the FMLA and ADA.[1]  *See Caldwell v. KHOU-TV*, 850 F.3d 237, 241-242 (5th Cir. 2017) (applying *McDonnell Douglas* standard to Plaintiff's ADA discrimination and FMLA claims).  Under that framework, Trautman is first required to establish a *prima facie* case of discrimination or retaliation.  If Trautman succeeds in doing so, the burden shifts to Time Warner Cable to articulate a legitimate non-discriminatory or non-retaliatory reason.  *Id.*  Once Time Warner Cable set forth its reason, Trautman must show the real reason for her discharge is pretext for discrimination or retaliation.  *Id.*

### B.   Trautman Cannot Establish *Prima Facie* Case of FMLA Retaliation or Interference

To establish a *prima facie* case of retaliation under the FMLA, Trautman must show: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was either (i) treated less favorably than an employee who had not requested leave under the FMLA or (ii) the adverse decision was made because she sought protection under the FMLA.

---

[1] Trautman's putative failure to accommodate claim is not itself subject to the *McDonnell-Douglas* analytical framework, although Trautman bears the burden of proving each element of her claim, including that (i) she is a qualified individual with a disability, (ii) the disability and its limitations were "known" by Time Warner Cable, and (iii) Time Warner Cable failed to make "reasonable accommodations" for such known limitations.  *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)

*Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006).   As for the FMLA's interference provision, it makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right.   29 U.S.C. § 2615(a)(1); *Arismendez v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 715 (W.D. Tex. 2008).   Thus, to establish a *prima facie* case of FMLA interference, Trautman must show that:   (1) she was an eligible employee, (2) Time Warner Cable was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) Time Warner Cable denied her benefits to which she was entitled under the FMLA.   *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 317 (5th Cir. 2013).

Here, Trautman's FMLA claims fail because she cannot establish all elements of her *prima facie* cases.   In the context of her FMLA retaliation claim, Trautman cannot establish she was treated less favorably than an employee who had not requested leave under the FMLA or that she was discharged because she sought FMLA leave.[2]   Trautman is similarly unable to establish the fifth element of her interference claim—that she was denied any FMLA benefit to which she was entitled.[3]   Instead, as the undisputed summary judgment evidence conclusively establishes, Trautman requested and received intermittent FMLA leave for her claimed driving induced anxiety attacks and was discharged solely for excessive absenteeism unrelated to her use of FMLA leave.

### 1.   No Evidence of Similarly Situated Employees

Trautman does not specifically allege in her controlling pleading that she was treated less favorably than a similarly situated employee who had not requested leave under the FMLA.   *See*

---

[2] Time Warner Cable does not dispute for the purpose of this Motion that Trautman was protected by the FMLA and suffered an adverse employment action.

[3] Time Warner Cable assumes for the purposes of this Motion that Trautman can establish:   (1) she was eligible for FMLA leave, (2) Time Warner Cable was subject to the FMLA's requirements, (3) she was entitled to the intermittent FMLA leave she sought, and (4) she gave proper notice of her intent to take intermittent FMLA leave.

Dkt. 1, Pl.'s Orig. Pet.  However, to the extent she claims such now, there is no evidence Time Warner Cable treated Trautman differently than similarly situated employees.  To prove retaliation based on disparate treatment, Trautman must show Time Warner Cable gave preferential treatment to another employee under "nearly identical" circumstances.  *See, e.g.*, *Ray v. United Parcel Service, Inc.*, 587 F. App'x 182, 194 (5th Cir. 2014) (affirming summary judgment where alleged comparator not similarly situated due to differences in disciplinary history); *Lorentz v. Alcon Labs., Inc.*, 535 F. App'x 319, 326 (5th Cir. 2013) (affirming summary judgment where alleged comparators had different supervisors or did not engage "nearly identical" misconduct).  The practical effect of this standard is that "comparators must share the same job or responsibilities, the same supervisor, the same conduct leading to the adverse decisions, and essentially comparable violation histories.  *Id.*  In Trautman's case, this means she must present evidence of another Workforce Management exempt employee reporting to Adrienne Greth who (1) accrued excessive absences during a three-month period, (2) did not make a request for FMLA leave, and (3) was not discharged for absenteeism.  *See Ray*, 585 F. App'x at 194.  Trautman, quite simply, cannot point to any such evidence.

In her deposition, Trautman alleged that all of her co-workers were treated more favorably than her.  *See* Ex. 1, Trautman Dep. at 242:12-18, 246:23-247:7, 248:22-255:24.  However, in so alleging, Trautman conceded she had no way of knowing whether any of her co-workers had requested FMLA leave or an ADA accommodation.  *Id.*  She also cannot put forth any evidence to suggest her co-workers engaged in "nearly identical" misconduct—namely excessive absences, including twenty-one full day absences, during a three-month period.  As a result, Trautman's vague and generic deposition contention that she was treated less favorably than her co-workers, in the absence of any specific facts or evidence to corroborate this belief, is not sufficient to defeat

summary judgment.  *See, e.g.*, *McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015) (deposition testimony that several unnamed employees had violated company's drug and alcohol policy but had not been terminated did not create genuine issue of material fact as to whether employer's stated reason for terminating plaintiff was pretextual).

Notably, the record evidence establishes the opposite of Trautman's belief.  In November 2014, Angela Wilson, another employee who reported to Adrienne Greth, was terminated for a similar pattern of excessive absences and late-arrivals.  *See* Ex. 28, Wilson Corrective Action Documents.[4]  Like Trautman, Wilson accrued excessive attendance policy violations, was counseled, and then ultimately terminated when her attendance did not improve.  *Id.*  Significantly however, in the months preceding her termination, Wilson did not make any request for FMLA leave or seek any sort of ADA accommodation.  *See* Ex. 3, Evans Decl. at ¶ 4.  In this regard, Wilson's termination demonstrates Greth approached attendance discipline similarly and most importantly without regard to FMLA usage or any claimed disability.

### 2.     No evidence Trautman was otherwise discharged because she sought FMLA leave

Like with her comparator allegation, Trautman cannot proffer any evidence that she was otherwise discharged because she sought FMLA leave.  To demonstrate a causal link between her request for FMLA leave and her discharge, Trautman must show "the protected activity and the adverse employment action are not completely unrelated."  *Bell v. Dallas Co.*, 432 F. App'x 330, 333 (5th Cir. 2011) (quoting *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)).  Trautman is unable to establish even this basic burden.

---

[4] The only difference between Trautman and Wilson is that Wilson was a non-exempt employee.  *See* Ex. 3, Evans Decl. at ¶ 4.  As a result, her attendance was tracked according to Time Warner Cable's written non-exempt attendance policy, which sets forth strict attendance standards based on the number of occurrences an employee accrues.  *See id.*  Although attendance for exempt employees is generally evaluated for patterns and trends, the expectation that an employee be on time and present at work more days than they are absent remains the same.  *Id.*

As an initial matter, Adrienne Greth and Madalyn Harrell, the Time Warner Cable employees involved in the decision to end Trautman's employment, were not in any way involved in the review or approval of her request for FMLA leave.  Instead, Trautman's requests were managed exclusively by Sedgwick, Time Warner Cable's third party administrator.  Additionally, the information Harrell and Greth received regarding Trautman's FMLA requests was limited solely to whether the request was pending, approved, or denied.  *See* Ex. 30, Harrell Dep. at 26:9-16 (explaining requests for intermittent FMLA leave are made directly through Sedgwick), 65:1-15 (explaining she was not involved in Trautman's FMLA request), *see also* 28:3-13 (describing Sedgwick's ViaOne system where Time Warner Cable employees could log in to view whether a particular FMLA absence was pending, approved, or denied); Ex. 4, Greth Dep. at 85:4-13 (explaining Sedgwick provides only limited information regarding employee leave requests such as whether the leave has been approved or denied), 87:23-88:9 (reiterating limited nature of information she received regarding Trautman's FMLA request).  In other words, none of the Time Warner Cable employees responsible for the decision to end Trautman's employment were involved in the review or consideration of her underlying request for FMLA leave or even knew the details of the various certifications her physician provided.

That aside, Trautman remains unable to point to a single piece of evidence connecting her request for FMLA leave with her discharge.  There is not, for instance, evidence Trautman was terminated immediately after she initiated her FMLA leave request.  To the contrary, the summary judgment evidence demonstrates Time Warner Cable refrained from taking any action to discharge Trautman until nearly three months after Trautman initiated her FMLA request in January 2015 and, and perhaps most importantly, only once it verified that Trautman was not penalized for any FMLA-approved absences.  *See* Ex. 27, April 9, 2015 Termination Form; Ex. 4, Greth Dep. at

33:13-18 (explaining she "had to spend a lot of time reconciling, uhm, what had been approved through Sedgwick for FMLA versus time that had actually been taken, versus time that she had available"); 50:20-51:5 (same).  In other words, Time Warner Cable specifically made an effort to ensure that any of the hours for which she was approved by Sedgwick to take intermittent FMLA leave were not part of any absences for which she was disciplined and ultimately terminated. As a result, summary judgment in Time Warner Cable's favor is fully warranted.  *See, e.g.*, *Bell v. Dallas County*, 432 F. App'x 330, 334 (5th Cir. 2011) (affirming summary judgment on FMLA retaliation claim where plaintiff's non-FMLA absences exceeded 102 hours, which was considered excessive under defendant's policy); *Talbott v. Time Warner Entertainment-Advance Newhouse P'ship*, No. EP-12-CV-3-KC, 2013 WL 152179, at *8 (W.D. Tex. Jan. 11, 2013) (no evidence of pretext even if plaintiff had been able to provide conclusive proof that defendant's reliance on third-party administrator's decision was somehow mistaken or erroneous); *Miedeme v. Facility Concession Servs., Inc.*, No. 09-2508, 2011 WL 2672358, at *4 (S.D. Tex. July 7, 2011), *aff'd*, 478 F. App'x 214 (5th Cir. 2012) ("an employer who holds a mistaken belief that its basis for adverse employment action is legitimate and non-discriminatory is not liable for retaliation").

### 3.   No Evidence Time Warner Cable Denied FMLA Benefits to Which Trautman Was Entitled

Trautman does not dispute that she requested and received intermittent FMLA leave prior to her termination of employment.  *See* Ex. 1, Trautman Dep. at 189:4-15, 196:16-197:19.  Instead, the gravamen of Trautman's FMLA interference claim appears to be her belief that Time Warner Cable should have applied her March 20, 2015 Sedgwick-approved certification retroactively to absences that she accrued before her treating physician provided the second certification to Sedgwick specifying the frequency and duration of her requested intermittent FMLA leave.  *See id.* at 198:4-199:16.  However, there is absolutely no evidence to support this argument.  To the

contrary, the summary judgment evidence demonstrates Trautman submitted two separate medical certifications, which provided different information regarding the frequency and duration of Trautman's claimed medical condition.  The result of these certifications was two separate FMLA approvals from Sedgwick—one on February 20, 2015 based on the initial information provided by Trautman's treating physician and a second certification on March 20, 2015 based on new information from Trautman's treating physician regarding the frequency and duration of Trautman's condition.  *See* Ex. 19, Feb. 20, 2015 Cert. Ltr.; Ex. 25, Mar. 20, 2015 Cert. Ltr.; Ex. 26, Claim Summary.

Indeed, on February 5, 2015, almost immediately after Trautman submitted her February 5, 2015 medical certification[5], and consistent with the practices set forth in the Code of Federal Regulations, Sedgwick contacted Trautman to request additional information regarding the frequency and duration of her condition.  *See* Ex. 17, Feb. 5, 2015 Req. to Correct Deficiency on Cert.; *see also* 29 C.F.R. § 825.305(c) ("The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient.").  On February 9, 2015 Trautman's treating physician completed an updated certification form from which Sedgwick determined the anticipated frequency and duration of Trautman's condition was one episode per week, with each episode lasting up to one hour.  Ex. 18, Feb. 9, 2015 Updated Cert.; Ex. 19, Feb. 20, 2015 FMLA Cert. Ltr.  Based on this information, Sedgwick also contacted Trautman to notify her that several of her claimed FMLA-related absences in January and February 2015 were not designated as FMLA-approved absences because they exceeded her physician's certification for frequency and duration.  Ex. 20, Feb. 20, 2015 Denial Letter.

---

[5] Although the medical certification was due to be returned to Sedgwick on February 4, 2015, the document is signed and dated by Trautman's treating physician on February 5, 2015.  *See* Ex. 16, Feb. 5, 2015 Cert. at 6.

Then, on March 2, 2015, Trautman submitted another certification with new information regarding the frequency and duration of her condition.  Ex. 24, Mar. 2, 2015 Cert.  This time, Trautman's treating physician indicated she would be absent up to five times a week, with each episode lasting up to one and a half hours.  *Id.*  Sedgwick considered this new information and issued a second certification on March 20, 2015 approving Trautman for more leave than her physician even indicated—five episodes per week with each episode lasting up to two hours.  *See* Ex. 25, Mar. 20, 2015 Cert.; Ex. 1, Trautman Dep. at 196:16-197:19; *see also* Ex. 26, ViaOne Claim Summary (showing Trautman's original certification and recertification based on March 2, 2015 doctor's note).  There is nothing in the FMLA regulations or summary judgment record to suggest this March 20 approval applied retroactively or better yet, should have applied retroactively.

Most significantly, however, even if the absences Trautman claims should have been approved as FMLA-related are not considered, Trautman's remaining ***twenty-one*** unexcused absences in January and February 2015 were excessive in and of themselves under Time Warner Cable's attendance standards.  *See* App. B; Ex. 1, Trautman Dep. at 222:2-223:20, 226:16-227:6, 227:24-228:15 (admitting numerous absences exceeded or were unrelated to FMLA certification); Ex. 29, Harrell Decl. at ¶ 3.  Stated differently, Trautman had more than enough absences outside of and unrelated her FMLA request that she would have been terminated for those alone and without considering any that she now contends should have been covered by her intermittent FMLA request.  *See* Ex. 29, Harrell Decl. at ¶ 3; App. B. As a result, she cannot claim that the alleged wrongful denial of any requested FMLA leave would have avoided her termination of employment; it would not have.  That fact alone is dispositive of her FMLA interference claim. *See, e.g.*, *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 656 (granting summary judgment on

Plaintiff's FMLA interference claim where Plaintiff's absences exceeded certification for intermittent leave). [6]

## C.     Trautman Cannot Establish Elements of Disability Discrimination Claims

To establish a *prima facie* case of disability discrimination, Trautman must establish (1) she suffers from a disability, (2) she is qualified for the job, and (3) there was a causal connection between an adverse employment action and her disability. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). The elements of Trautman's failure to accommodate claim are similar, requiring her to establish: (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by Time Warner Cable, and (3) Time Warner Cable failed to make reasonable accommodations for such known limitations. *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013).

### 1.     Trautman Not Disabled Because Her Anxiety Condition Does Not Substantially Limit a "Major Life Activity"

Although the intent of the ADAAA was to broaden the meaning and coverage of disability, a plaintiff alleging disability discrimination is not absolved from proving, as a threshold matter, that she suffers from a disability. *See id.*; *see also Troutman v. Williams Cty*, No. 1:14-CV-986-DAE, 2016 WL 1257989, at *4 (W.D. Tex. March 30, 2016) ("As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability."). The ADAAA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having

---

[6] To the extent Trautman claims her twenty-one unexcused absences in January and February 2015 should have been excused under the FMLA, and setting aside the fact that Trautman never requested FMLA leave related to those absences, Trautman would not have been eligible for FMLA leave because there is no evidence to suggest her twenty-one absences in January and February 2015 were FMLA-qualifying. *See* Ex. 1, Trautman Dep. at 221:10-18, 223:10-25, 225:15-227:6, 227:24-228:15; Ex. 4, Greth Dep. at 48:22-49:12; *see also Mincey v. Dow Chem. Co.*, 217 F. Supp. 2d 737, 741 (M.D. La. 2002) (granting summary judgment where employee missed nearly half of her scheduled work for non-FMLA-qualifying reasons such as "the flu, various infections, her daughter's illness, school parties for her daughter, the birth of a niece and other unspecified illness").

such an impairment."  42 U.S.C. § 12102(1).  In general, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" are considered to be major life activities.  *Id.* at § 1630.2 (i)(1)(ii).  Driving is generally not considered a major life activity.  *See, e.g.*, *Wilson v. Capital Transp. Corp.*, No. 99–31156, 2000 WL 1568200, at *1 n. 4 (5th Cir. Sept. 15, 2000) ("Driving may be ubiquitous in our society, but we are not prepared to hold today that driving is a major life activity for ADA purposes."); *Randall v. United Petroleum Transp., Inc.*, 131 F. Supp. 3d 566, 571 (W.D. La. 2015) (noting Fifth Circuit has declined to find driving a major life activity under the ADA); *accord Kimble v. Potter*, 390 F. App'x 601, *3 (7th Cir. 2010) (plaintiff's inability to drive more than 30 minutes from her home did not substantially limit her capacity to perform a major life activity, particularly where plaintiff lived in urban area with access to abundance of jobs less than 30 minutes from her home); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 685 (7th Cir. 2000) (phobia about driving in unfamiliar locations did not substantially limit major life activity of working under ADA); *Chenoweth v. Hillsborough Co.*, 250 F.3d 1328, 1329-30 (11th Cir. 2001) (holding driving not major life activity and noting that driving is "conspicuously different in character from the activities listed" in the statute because "[i]t would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure").

In the instant case, the only activity identified as impacted by Trautman's anxiety condition is her ability to drive.  *See* Ex. 1, Trautman Dep. at 20:19-22:14 (admitting she is able to work, care for herself and children, grocery shop in spite of anxiety and explaining only true limitation is to her ability to drive); *see also* Ex. 13, Jan. 13, 2015 Dr. Hart Note; Ex. 10, Req. for Accommodation.  In fact, according to Trautman's treating physician, Dr. Hart, the only functional

limitation Trautman experienced was "anxiety/panic attacks" and the only impact was her "ability to drive in heavy traffic."  Ex. 10, Req. for Accommodation.  Dr. Hart later reiterated the driving-related nature of Trautman's impairment in his January 13, 2015 note regarding her condition, although he eliminated a reference to "in heavy traffic":

> To whom it may concern:
>
> Ms. Trautman has a severe driving phobia that results in disabling anxiety and panic while driving.  She is having medical treatment for this through presently is unable to drive without these symptoms.  Please consider work at home if possible.  She is functional otherwise and should have no other difficulty working.

Ex. 13, Jan. 13, 2015 Dr. Hart Note.  Be that as it may, there is absolutely no evidence to suggest Trautman's anxiety related to driving substantially limited a major life activity as required to establish that Trautman is disabled within the meaning of the ADAAA.

### 2.    Trautman Not "Qualified Individual" within Meaning of ADAAA

In the context of the ADAAA, a "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires."  *See* 42 U.S.C. § 12111(8).  To avoid summary judgment, Trautman must show either (1) that she could perform the essential functions of the job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job.  *See Moss v. Harris Cty.. Constable Precinct One*, 851 F.3d 413, 417-18 (5th Cir. 2017).  In determining which functions of a job are essential, deference is afforded to the employer's description of the job and functions required to perform that job.  *Credeur v. State of La.*, No. 16-30658, 2017 WL 2704015, at *5-6 (5th Cir. June 23, 2017) (slip opinion).  Significantly, "there is a general consensus among courts, including [the Fifth Circuit], that regular work-site attendance is an essential function of most jobs."  *Id.* at *4 (citing *Hypes on Behalf of*

*Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases); *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) ("[The] general rule [is] that, with few exceptions, 'an employee who does not come to work cannot perform any of his job functions, essential or otherwise.'" (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) (en banc))).

In the instant case, Trautman seeks to ignore well-established principles, arguing instead that physical attendance at Time Warner Cable's Austin location was not an essential function of her Workforce Analyst position.   Trautman further contends that she should have been permitted to work permanently from home full-time or, in the alternative, part of the day each day.  *See* Ex. 1, Trautman Dep. at 24:6-9; *see also* Ex. 13, Jan. 13, 2015 Dr. Hart. Ltr.  In this regard, Trautman's case is virtually identical to one recently considered by the Fifth Circuit, *Credeur v. State of La.*, No. 16-30658, 2017 WL 2704015 (5th Cir. June 23, 2017) (slip opinion).

In *Credeur*, the plaintiff, an assistant attorney general in the Medical Malpractice Section of the Office of Attorney General for the State of Louisiana ("DOJ"), was granted a temporary work from home accommodation following a kidney transplant.  *Credeur*, 2017 WL 2704015, at *2.  When the time for Credeur's temporary accommodation expired, Credeur did not return to work and instead sought an extension of her original work from home accommodation.  The DOJ denied Credeur's request, and Credeur eventually filed suit alleging failure to accommodate, harassment, and retaliation in violation of the ADA.  *Id.* at *1.  The district court granted summary judgment on Credeur's failure to accommodate claim because it determined she was not a "qualified individual" within the meaning of the ADA since she could not perform an essential function of her job—regular attendance in the office.  *Id.* at *3.

In its decision affirming summary judgment, the Fifth Circuit noted that, while an

employee's evaluation of the essential functions of her job may provide some insight into her daily tasks, it is the role of the employer—not the employee—to define the essential functions of the position.  *Id.* at \*5.  As a result, Credeur's testimony that she had successfully worked from home on several prior occasions and could have done so during the time period in question was not sufficient to create a fact issue and defeat summary judgment.  As the Fifth Circuit aptly stated:

> we do not 'allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.'"
> If that were not the case, "every failure-to-accommodate claim involving essential functions would go to trial because all employees who *request* their employer exempt an essential function *think* they can work without that essential function.

*Id.* (quoting *EEOC v. Ford Motor Co.*, 782 F.3d 753, 764 (6th Cir. 2015).

The same is true in Trautman's case.  The mere fact that Trautman was permitted to work-from home temporarily in 2014 following the birth of her daughter does not undermine Time Warner Cable's contention that Trautman's position required daily attendance at the office. Likewise, Trautman's belief that the requirements of her Workforce Analyst position could be completed at home does not in and of itself establish that such an accommodation would have been feasible.  In fact, the evidence establishes the contrary; her Workforce Analyst position actually required significant time in the office to facilitate collaboration and the documentation of processes.  *See* Ex. 4, Greth Dep. at 101:13-102:2, 104:6-12; *see also* Ex. 12, Email re Req. for Accommodation.[7]  Not only that, but Trautman's manager, Adrienne Greth, expressed particular concern about the fact that Trautman had not been performing the essential functions of her job even during the time she allegedly was working from home, Ex. 4, Greth Dep. at 19:6-15 (explaining Trautman was performing tasks outside of her job description); 22:6-7, 22:15-23:9,

---

[7] The importance of collaboration among Time Warner Cable's workforce analyst employees is underscored by the "command center" work environment in which employees sat around long tables rather than traditional desks or cubicles.  *See* Ex. 1, Trautman Dep. at 165:1-7.

93:14-95:1 (describing job functions Trautman was not able to perform from home).  This raised a further concern as to whether Time Warner Cable's ability to adequately supervise Trautman was compromised when she worked from home.  *See id.* at 37:10-19 (expressing concern that Trautman was caring for her children during work hours while working from home).  As is evident, despite Trautman's protestations to the contrary, her physical presence in the office during regular business hours was an essential function of her Workforce Analyst position.  Because she could not adhere to that regular attendance, she was clearly not a qualified individual.

### 3.    Trautman's Requested Accommodation Not "Reasonable," as a Matter of Law

Significantly, even assuming *arguendo* that Trautman was a qualified individual with a disability, her requested accommodation—that she be permitted to work either full-time or part-time from home—was not reasonable as a matter of law.  Indeed, when an employer determines the essential functions of the position can only be performed in the workplace, teleworking is not considered a reasonable accommodation.  *Credeur*, 2017 WL 2704015, at *5 (citing EEOC Fact Sheet, *Work At Home/Telework as a Reasonable Accommodation* (Oct. 27, 2005), http://www.eeoc.gov/facts/telework.html.); *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (noting "[a]n employer is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced").  This is especially true in cases where the position requires "face-to-face interaction and coordination of work with other employees" or "the employer is unable to supervisor the employee adequately."  *Credeur*, 2017 WL 2704015, at *5; *Hypes*, 134 F.3d at 727 ("[T]eam work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." (internal quotation omitted)); *see* Ex. 4, Greth Dep. at 93:14-95:1; 101:5-104:16; *see also* Ex. 12, Email re Req. for Accommodation.

Putting that aside, there were numerous other options Trautman could have tried to avoid her driving-induced anxiety beyond her desired work-from-home accommodation.  For instance, Trautman could have investigated public transportation options, utilized ride sharing or carpooling services, or sought rides from family members.  Trautman never even attempted these options, mandating instead that Time Warner Cable accede to her request to work from home in the afternoon.[8]  Trautman's mandate, however, was not and is not supported by the ADA.  Although the ADA creates a right to a reasonable accommodation, it does not create a right to an employee's requested accommodation.  *E.E.O.C. v. Argo Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) ("The ADA provides a right to a reasonable accommodation, not to the employee's preferred accommodation.").  Therefore, while Trautman may have preferred to spend her afternoons working from home, the ADA does not and did not entitle Trautman to such.

### 4.    Time Warner Cable Engaged in Interactive Process in Good Faith

Additionally, to the extent Trautman claims Time Warner Cable failed to engage in the interactive process, there is absolutely no evidence to suggest any breakdown in that process was attributable to Time Warner Cable.  The ADA's regulations explain that, once an employee has made a request for accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).  Neither the ADA nor its implementing regulations, however, impose a specific procedure.  Instead, the regulations and courts analyzing those regulations emphasize that the process should be truly *informal* in nature.  *Louiseged v. Akzo Noebl Inc.*, 178 F.3d 731, 736-37 (5th Cir. 1999).  This is because the "interactive process" is not an end in itself; it is merely an

---

[8] There is no dispute that both Time Warner Cable and Trautman considered a 7:00 am arrival to the office to be a reasonable accommodation.  In fact, both Time Warner Cable and Trautman's physician suggested such. *See* Ex. 10, Req. for Accommodation; Ex. 11, Resp. to Req. for Accommodation.

end to forging a reasonable accommodation. *Claiborne v. Recovery School Dist.*, No. 16-30667, 2017 WL 2480724, at *3 (5th Cir. June 7, 2017) (unpublished). Therefore, an employer only violates the ADA when its "unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee." *Id.* (emphasis original).

The summary judgment evidence in the instant case demonstrates Time Warner Cable reviewed Trautman's request, the requirements of her job position, and its business needs. *See* Ex. 4, Greth Dep. at 100:11-104:12; *see also* Ex. 10, Req. for Accommodation; Ex. 12, Greth Accommodation Analysis Email; Ex. 11, Resp. to Req. for Accommodation. Additionally, after Trautman's initial work-from-home request was denied, Time Warner Cable proposed alternative work hours. *See* Ex. 11, Resp. to Req. for Accommodation. Trautman refused this alternative proposed and instead demanded yet another part-time work from home accommodation. *See Id.* In demanding such, Trautman admits she never attempted Time Warner Cable's proposed schedule modification and accordingly has no way of knowing whether the 7:00 am to 4:00 pm work hours would have adequately accommodated her condition. Ex. 1, Trautman Dep. at 157:6-19. In light of such, any breakdown in the interactive process in the instant case is ultimately attributable to Trautman, not Time Warner Cable. Consequently, summary judgment is fully appropriate on Trautman's failure to accommodation claim. *See, e.g.*, *Dillard v. City of Austin*, 837 F.3d 557, 564 (5th Cir. 2016) (holding employer not responsible for breakdown in interactive process when employee failed to make any effort to succeed in reassigned position: "[a]s he did not attempt to fill his new role in good faith, Dillard cannot rely on the fact that he did not successfully adjust to that role to show that the City should have continued the interactive process by offering him a further alternative placement"); *Tribble v. Ouachita Parish Policy Jury*, 939 F. Supp. 2d 626, 632 (W.D. La. 2013) (breakdown in informal, interactive process attributable to employee where

employer offered assigned parking space adjacent to handicap spaces intended for public, but employee refused); *Gunderson v. Neiman-Marcus Group, Inc.*, 982 F. Supp. 1231, 1236-37 (N.D. Tex. 1997) (granting summary judgment where employee who required modified schedule of working only four days a week refused reasonable accommodation of a floating sales position in the same department offered by employer).

### 5. Trautman Cannot Establish a Causal Connection between her Alleged Disability and her Termination of Employment

Finally, there is absolutely no evidence to connect Trautman's alleged disability to her termination of employment for her excessive absences. Indeed, a majority of Trautman's absences cited on her termination form were wholly unrelated to her anxiety condition. *See* Ex. 1, Trautman Dep. at 223:10-224:11, 225:15-228:15; *see also* Appx. B. Beyond that critical fact, Trautman cannot identify with specificity any non-disabled employee treated more favorably under nearly identical circumstances. *See McCollum*, 628 F. App'x at 230 (reiterating requirement that plaintiff identify comparator who engaged in "nearly identical" misconduct to establish pretext); *see also* Ex. 1, Trautman Dep. at 239:2-240:5, 242:12-244:14 (alleging all of her co-workers were treated more favorably). As discussed above in the context of Trautman's FMLA retaliation claim, the only employee in Trautman's work group with a similar poor attendance record was treated exactly the same—she was warned repeatedly for her attendance violations before her employment was terminated. *See* Ex. 28, Angela Wilson Corrective Action Documents. The only significant difference between Wilson and Trautman is that, unlike Trautman, Wilson did not claim to suffer from a disability and had not requested any form of work-related accommodation. Ex. 3, Evans Decl. at ¶ 4. That significance, however, means Trautman cannot establish the requisite causal nexus.

**D.**     **Time Warner Cable Had Legitimate, Non-Discriminatory, Non-Retaliatory Reason for Trautman's Discharge**

Even if Trautman could establish a *prima facie* case under the FMLA or ADA, Time Warner Cable had a legitimate, non-discriminatory, non-retaliatory reason for her discharge—her numerous unexcused absences over a three-month period.  *See* Ex. 27, Termination Form; Ex. 23, Final Written Warning; Ex. 21, Written Warning.  These absences included twenty-one that Trautman concedes were unrelated to her request for intermittent FMLA leave.  *See* Ex. 27, Termination Form; Ex. 1, Trautman Dep. at 222:2-223:20, 226:16-227:6, 227:24-228:15 (admitting numerous absences exceeded or were unrelated to FMLA certification). [9]  As many courts have regularly held, absenteeism is a legitimate reason for discharge.  *See, e.g.*, *Bell*, 432 F. App'x at 334 (no evidence of retaliation when employer discharged employee for violation of attendance policy, where employee's non-FMLA absences were excessive and negatively impacted the office's productivity); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 336 (5th Cir. 2005) (violation of attendance policy was non-retaliatory reason for discharge (FMLA)); *Sanchez v. U.S. Postal Serv. ex. Rel. Donahoe*, 430 F. App'x 368, 371 (5th Cir. 2011) (firing employee for forty days of unscheduled sick leave legitimate); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) (excessive absenteeism is nondiscriminatory reason for discipline and termination).  Consequently, Time Warner Cable has met its burden of production, thereby shifting the ultimate burden to overcoming summary judgment to Trautman.

**E.**     **No Evidence of Pretext**

In short, Trautman cannot present any competent summary judgment evidence to suggest

---

[9] In fact, under the written attendance policy applicable to Time Warner Cable's non-exempt employees, Trautman's termination would have been warranted as early as February 24, 2015.  By that date, Trautman had already accrued 134 hours of unapproved, non-FMLA absences.  *See* App. B.  Under the policy, termination is warranted after an employee accrues 112 hours of unapproved absences in a rolling 12 month period.  Ex. 31, Attendance Policy at 4.

Time Warner Cable's legitimate, non-discriminatory, non-retaliatory reason was pretext for unlawful discrimination or retaliation.  To avoid summary judgment, Trautman must present "substantial evidence" that Time Warner Cable's legitimate, nondiscriminatory reason for her termination—excessive absenteeism—is pretextual.  *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016).  To establish such, Trautman must present evidence of either disparate treatment or show that Time Warner Cable's proffered explanation is false or unworthy of credence.  *Id.*  Trautman, however, cannot identify any evidence Time Warner Cable was motivated by any discriminatory or retaliatory animus whatsoever.

At the outset, as discussed previously, the summary judgment evidence conclusively establishes that Trautman was treated identically to another workforce management employee who accrued excessive absences but had not required FMLA leave or ADA accommodation.  *See* Ex. 28, Wilson Corrective Action Docs; Ex. 3, Evans Decl. at ¶ 4.  The record is also devoid of any evidence that can cast doubt on Time Warner Cable's reason for ending Trautman's employment. In fact, the summary judgment evidence indicates Greth delayed taking action to end Trautman's employment until after she confirmed Trautman's absences would not be FMLA-approved.  Ex. 4, Greth Dep. at 33:13-18; 50:20-51:5.  Discharging an employee for absenteeism after it is determined absences cannot be certified as FMLA leave is not retaliation under the FMLA.  *Bell*, 432 F. App'x at 334 ("The County did not fire [the plaintiff] because he sought to use his FMLA leave or because Bell opposed 'an unlawful procedure' under the FMLA.  Rather, the County fired [the plaintiff] because his non-FMLA absences were excessive and the absences negatively impacted the office's productivity.").[10]  By the same token, it is not discrimination under the ADA.

---

[10] To the extent Trautman claims her excessive, non-FMLA absences were somehow approved, her evidence allegedly in support is similarly insufficient to establish pretext.  *Cf. Delaval*, 824 F.3d at 480 (while the e-mails between plaintiff and supervisor may raise a fact question about whether any of plaintiff's absences were authorized,

*See, e.g.*, *Starts v. Mars Chocolate N. Am., LLC*, No. 14-CV-064, 2014 Wl 11510274, at *5 (W.D. Tex. Dec. 18, 2014) (granting summary judgment on ADA claim where plaintiff terminated for excessive absenteeism after he was cleared for full-time work); *Kenneally v. Gulfside Supply, Inc.*, No. A-10-CA-289 AWA, 2012 WL 718599, at *3 (W.D. Tex. March 4, 2012) (ADA claim summarily dismissed because absenteeism legitimate, non-discriminatory reason for discharge).

### IV.   CONCLUSION & PRAYER

As is evident, there is absolutely no evidence to support Trautman's claims of disability discrimination and FMLA violations.  Defendant accordingly prays this Court grant its Motion for Summary Judgment and dismiss Trautman's claims in their entirety.  Defendant further prays for its costs and attorney's fees and to all other relief to which it is justly entitled.

Respectfully submitted,

/s/ Christine E. Reinhard
Christine E. Reinhard
Texas Bar No. 24013389
Brooke S. Waldrep
Texas Bar No.24066802
SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
PH:  (210) 447-8033
FX:  (210) 447-8036
creinhard@sr-llp.com
bwaldrep@sr-llp.com

**ATTORNEYS FOR DEFENDANT**

---

they do not indicate that employer's stated reason for firing plaintiff (absenteeism) was a pretext because "[m]anagement does not have to make proper decisions, only non-discriminatory ones").

## <u>CERTIFICATE OF SERVICE</u>

On July 25, 2017, a true and correct copy of this document was served *via the Court's electronic filing system* on the following counsel of record:

Kell A. Simon
The Law Offices of Kell A. Simon
902 East Fifth Street, Suite 207
Austin, Texas 78702
kell@kellsimonlaw.com

/s/ Christine E. Reinhard
Christine E. Reinhard